# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JUSTINE OSORO MOCHAMA ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant. ) | Case No. _____ <br><br> (Related to 14-cv-02121) |

## COMPLAINT

1. Mr. Justine Mochama ("Mr. Mochama") is a citizen of Kenya who came to the United States for university studies on an F-1 visa. He is married to a U.S. citizen and was living in Wichita, Kansas until his apprehension by immigration authorities.

2. Plaintiff brings this action against Defendant United States of America under the Federal Tort Claims Act.

3. This matter is brought as a related case to the previously-filed action brought against local and federal officials under docket number 14-cv-02121.

4. Mr. Mochama's complaint arises from two violent attacks against him by government officials in the early morning of January 28, 2014, the refusal by government officials to protect him from attack, and the failure by government officials to provide him with medical care after he was attacked.

### *Jurisdiction and Venue*

5. This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1331 & 1346(b).

6. On January 7, 2015, Plaintiff submitted an Administrative Tort Claim to ICE and

1

the United States Department of Homeland Security ("DHS"). Defendant mailed Plaintiff a letter on January 24, 2015 denying his administrative claim. Plaintiff has therefore exhausted all available administrative remedies.

7. Venue is properly with this District under 28 U.S.C. § 1402(b) as the acts that are the subject of this Complaint occurred within the District, in Butler County and Sedgwick County, Kansas.

*Parties*

8. Plaintiff Justine Osoro Mochama ("Mr. Mochama" or "Plaintiff") is and was at all times relevant to this Complaint an adult resident of the State of Kansas.

9. Jane Patty-Kill ("Patty-Kill"), Rodney Nichols ("Nichols"), Andrew Pleviak ("Pleviak"), Alan Van Skike ("Van Skike"), and Timothy Zwetow ("Zwetow"), all of whom are named defendants in the related matter, No. 14-cv-02121-KHV-TJJ, and any and all other federal officers involved in the decision assault, attack, and fail to protect Mr. Mochama (collectively "ICE officers") were at all times relevant to this Complaint officers employed by ICE, an executive agency of the United States of America.

10. At all times relevant to this Complaint, the ICE officers were acting within the scope and course of their employment with ICE and, as such, the United States of America is the appropriate defendant under the Federal Tort Claims Act.

11. At all times relevant to this Complaint, the ICE officers were acting as investigative or law enforcement officers.

*Factual Allegations*

**I. Background**

12. In March, 2013, certain agents of the DHS arrested Mr. Justine Mochama

pursuant to an order of removal, directing that he be deported to Kenya because his student visa had expired.

13.     From March, 2013 until the present day, the DHS has detained Mr. Mochama at the Butler County Adult Detention Facility to await his deportation to Kenya.

14.     In the months following Mr. Mochama's arrest pursuant to his order of removal, Mr. Mochama has cooperated with the efforts by DHS agents to deport him, including, *inter alia*, signing certain paperwork and permitting agents of DHS to take impressions of his fingerprints.

15.     To date, Mr. Mochama has not been deported to Kenya.

16.     On January 17, 2014, Mr. Mochama filed a petition for a writ of habeas corpus *pro se* in this Court, which was assigned Case Number 5:14-cv-03015-RDR, alleging that his prolonged detention by DHS had exceeded the presumptively reasonable six-month period identified by the Supreme Court in its decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

17.     In the early morning on January 28, 2014 Nichols and Zwetow travelled to the Butler County Adult Detention Facility in Butler County, Kansas.

18.     Mr. Mochama was woken from his sleep before 4:00 AM on January 28, 2014 and told that he would be required to sign and place his inked fingerprint on a form, which he understood to be a Form I-229a. He was not told he was scheduled to be deported on that day.

19.     Concerned that he was being tricked into signing papers he did not understand that would cause him to waive certain raise to contest his prolonged detention, Mr. Mochama asked the ICE officers if he could first speak with his attorney before signing or putting his fingerprint on the documents. The ICE officers said he was not permitted to speak with any attorney had to sign and print the form right then.

20.     When Mr. Mochama insisted on speaking with his attorney before signing the

form which he did not understand, Zwetow and Nichols physically assaulted Mr. Mochama in the Butler County Adult Detention Facility to try to physically force his finger onto a black ink pad and then to place his fingerprint by force on the piece of paper.

21. Zwetow and Nichols physically attacked Mr. Mochama solely because he declined to sign or print the form, which he did not understand, without the advice or assistance of his attorney. This amounted to excessive force.

22. At about 4:15 AM, Mr. Mochama was standing with his hands in his pockets next to the booking desk in the booking room at the Butler County Adult Detention Facility.

23. Zwetow and Nichols approached Mr. Mochama from either side, with Nichols on Mochama's left and Zwetow on Mochama's right. Nichols put his hands on Mr. Mochama and turned him so that Zwetow was now behind Mochama. Together, Nichols and Zwetow picked Mochama up into the air in an apparent attempt to get his hands free so that he could be forced to fingerprint the form.

24. Mr. Mochama insisted that he would not fingerprint the form until his attorney could see it. Both men continued to pull on both of Mochama's arms. At 4:16:01 Nichols pulled hard on Mochama's right arm, causing him to fall forward and causing Zwetow, who was holding onto him from behind, to trip as well.

25. Zwetow punched Mr. Mochama in stomach with his closed right fist.

26. Zwetow then placed his right arm around Mochama's neck in a choke hold from behind and squeezed Mr. Mochama's neck, choking him and pulling him backwards. Zwetow then crouched with his right knee on the floor and slammed Mr. Mochama head first into the concrete floor.

27. After his head hit the concrete floor, Mochama took his left arm and placed it

under his head to attempt to prevent the officers from injuring his head further. Zwetow mounted Mochama and placed both hands on the back of Mochama's neck. Zwetow then placed his left hand on the back of Mr. Mochama's head and forced Mr. Mochama's head into the concrete floor while Nichols tried to force Mr. Mochama's right hand from his pocket to fingerprint the form.

28. As Nichols continued to try to force Mochama's right hand free, Zwetow retrieved the form and an inkpad to try to force Mr. Mochama to place his fingerprint on the form. By the time he had returned, Nichols was laying with his full weight on Mochama and reaching underneath Mochama to try to pull his arms out.

29. When Zwetow returned with the paper and inkpad, he placed his right hand on Mr. Mochama's head and pushed it down into the concrete while using his left hand to try to pull at Mr. Mochama's hands. Nichols several times shifted his weight to lay with his full force on Mr. Mochama, while Zwetow moved around Mr. Mochama and used his hands to push Mochama's head into the ground.

30. Nichols then began to pick up Mr. Mochama from the ground with both of his hands on Mochama's shoulders, while Zwetow pulled on the hood of Mochama's hooded sweatshirt. They then placed Mr. Mochama in a chair, where he was compliant and allowed the officers to put handcuffs on him. Mochama then willingly walked into a holding cell.

31. After Mr. Mochama was removed from the room, an employee of the Butler County Adult Detention Facility cleaned an area of the floor approximately 24" by 24" in area stained with Mr. Mochama's blood.

32. Zwetow and Nichols used far more force than was necessary or reasonable in the circumstances and caused substantial pain and physical harm to Mr. Mochama without reason.

5

33. Zwetow did not attempt to intervene when Nichols was harming Mr. Mochama.

34. Nichols did not attempt to intervene when Zwetow was harming Mr. Mochama.

35. The ICE officers engaged in prohibited, dangerous tactics in the scope of their employment which risked seriously injuring or killing Mr. Mochama. These actions were done with a wanton and gross disregard for Mr. Mochama's wellbeing and were far in excessive of any degree of force that could have hypothetically been reasonable.

36. The attack on Justine Mochama on the morning of January 28, 2014 was recorded on at least two surveillance cameras at Butler County Adult Detention Facility.

37. After the attack at Butler County Adult Detention Facility, the ICE officers forced Mr. Mochama to travel to the Wichita office of Immigration and Customs Enforcement ("ICE"), located in Sedgwick County, Kansas.

38. At the Wichita ICE office, Mr. Mochama again asked to be permitted to speak with his attorney. The ICE officers refused to permit him to do so.

39. Instead, ICE officers again attacked Mr. Mochama.

40. During this second physical assault, Zwetow and Patty-Kill both attempted to force Mr. Mochama's hands from his pockets to fingerprint the Form I-229a against his will.

41. Zwetow then picked up Mr. Mochama from behind with both arms around Mr. Mochama's body and lifted him into the air with excessive force, causing him great pain to his midsection, stomach, hand, and ribcage, and causing Mr. Mochama to be unable to breathe and to fear for his life.

42. Zwetow then kneed the back of Mr. Mochama's legs with his own right leg, causing Mr. Mochama to bend forward and his legs to move forward.

43. Zwetow then put his right arm around Mr. Mochama's neck and swung Mr.

Mochama to the right, hitting Mr. Mochama's head into a wall/pillar.

44. The ICE officers then turned Mr. Mochama and pushed him to the ground.

45. Once Mr. Mochama was on the floor the ICE officers worked to force Mr. Mochama to fingerprint the Form I-229a against his will by laying on top of him, holding him down, and pushing his head into the floor. Zwetow laid on top of Mr. Mochama while Nichols and Van Skike continued to push Mr. Mochama's face and body into the concrete floor while Patty-Kill and Pleviak forced Mr. Mochama's hand onto an ink pad and then onto the Form.

46. This second physical assault on Mr. Mochama was recorded on surveillance equipment at the DHS facilities.

47. Following the second attack on Mr. Mochama at the DHS office, Mr. Mochama informed the ICE officers that he had suffered a head injury, was experiencing symptoms of a head injury, and needed to go to a hospital. Mr. Mochama was placed into a holding cell at the DHS office where he vomited into the toilet and continued to experience symptoms of a head injury.

48. While in the DHS holding cell, Mr. Mochama witnessed through the window the ICE Officers attacking a second Kenyan national in the same manner as Mr. Mochama.

49. The ICE officers took photographs of Mr. Mochama's injuries on January 28, 2014.

50. The ICE officers did not treat Mr. Mochama for a head injury, did not evaluate him for a concussion, and did not take him to a hospital or allow him to see a doctor.

51. Zwetow and Nichols drove Mr. Mochama back to the Butler County Adult Detention Facility on the morning of January 28, 2014 and, upon information and belief, ordered him to be placed in segregation as punishment for his refusal to print the form without contacting

an attorney. Zwetow and Nichols falsely told the Butler County Jail that Mr. Mochama had "kicked" a DHS officer, which they knew to be false.

52. In truth, as confirmed by both the video of the attack and the affidavits filed by ICE officers in the related civil case filed by Mr. Mochama, Mr. Mochama had not kicked an ICE officer.

53. Upon arrival back at the Butler County Jail on January 28, 2014, Mr. Mochama and the other inmate that had been at Wichita ICE office both requested medical assistance because of injuries they both suffered when ICE officers attacked them. While the other Kenyan was taken to see a doctor before being re-admitted to Butler County jail, Mr. Mochama was not permitted to see a doctor and was not evaluated for a concussion or other serious internal injuries.

54. The two physical beatings of Mr. Mochama on January 28, 2014 have caused him extreme physical pain. In addition to the immediate pain of being beaten and physically assaulted on January 28, 2014, Mr. Mochama has continued to experience pain in his head and elbow.

55. Since the two beatings that occurred on January 28, 2014, Mr. Mochama has experienced extreme anxiety and psychological trauma, including inability to sleep, nightmares involving being attacked by officers, depression, and fear that the agents who are in charge of his custody will again return and physically assault him.

56. Mr. Mochama filed an administrative request on Standard Form 95 with Immigration and Customs Enforcement.

57. On January 24, 2015, the United States responded to Mr. Mochama's request by sending him a letter, stating that his request was denied. Although letter is dated January 20,

2015, the postage on the envelope states that it was purchased on January 23, 2015, and the USPS certified mail tracking system states that it was delivered to the USPS for mailing on January 24, 2015.

**CAUSES OF ACTION**

**Count I - Plaintiff v. Defendant United States of America**
**Federal Tort Claims Act – Assault and Battery**

58. Plaintiff incorporates Paragraphs 1 through 64 above.

59. Zwetow, Nichols, Van Skike, Patty-Kill, and/or Pleviak threatened to and intentionally did bodily harm to Mr. Mochama, resulting in an immediate apprehension of bodily harm by Mr. Mochama.

60. Zwetow, Nichols, Van Skike, Patty-Kill, and/or Pleviak intentionally struck Mr. Mochama on his body with the intent of bringing about either contact or an apprehension of bodily contact that was harmful and offensive.

61. Zwetow, Nichols, Van Skike, Patty-Kill, and Pleviak did not use the least amount of force necessary and had no reason to physically assault Mr. Mochama on January 28, 2014.

62. Zwetow, Nichols, Van Skike, Patty-Kill, and Pleviak knew or should have known that slamming Mr. Mochama head-first into a concrete floor, repeatedly pushing and hitting his head against the floor, and physically attacking him was dangerous, and they recklessly disregarded the danger of their wanton conduct.

63. Despite Mr. Mochama demonstrating no risk of harm to the officers, no aggressive behavior, and solely resisting having to sign or imprint a paper without first talking with his attorney, Zwetow and Nichols intentionally used what are called "Hard Techniques," which DHS training materials describe as "[t]echniques with which there is a greater possibility of injury (e.g., strikes, throws, 'take-downs,' or striking using impact weapons such as

9

expandable batons, straight batons, authorized less-lethal devices and specialty impact weapons)."

64. In attacking Mochama on January 28, 2014, Zwetow used what are called "Prohibited Force Acts and Techniques," which DHS training materials say include "Choke holds, carotid control holds, and other neck restraints."

65. As a result of the acts and omissions of the Defendant, Plaintiff has been damaged as alleged in the above Paragraphs.

66. The acts and omissions of the Defendant were driven by an evil motive or intent, or with reckless or callous indifference to or disregard of the Plaintiff's constitutional rights, by reason of which Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

## Count II - Plaintiff v. Defendant United States of America
## Federal Tort Claims Act – Negligence

67. Plaintiff incorporates Paragraphs 1 through 73, above.

68. Defendant had a duty to use reasonable care in the detention of Mr. Justine Mochama, and in attempting to deport him, which included not physically beating him about the head and body and providing him reasonable medical care.

69. Defendant had a duty in serving the form I-229a on Mr. Mochama in a manner that would not cause him bodily and mental harm.

70. A reasonable person under the same circumstances would not have slammed Justine Mochama in the concrete floor solely to obtain his fingerprint for a ministerial form, as described above, and would have provided him with medical treatment, including screening him for a concussion and other internal injuries, following the two beatings described above.

71. After learning of Mr. Mochama's injuries, Defendant failed to use the degree of

skill and learning in treating his medical injuries ordinarily used under the same or similar circumstances by members of the medical profession.

72. Defendant's negligence was the proximate cause of Mr. Mochama's injuries and damages.

73. As a result of the acts and omissions of the Defendant, Plaintiff has been damaged as alleged in the Paragraphs above.

WHEREFORE, Plaintiff respectfully requests:

    A. Compensatory damages in excess of $75,000, as well as nominal damages and punitive damages;

    B. Reasonable attorneys' fees, expenses, and costs;

    C. Such other and further relief as may be just and appropriate.

Respectfully submitted,

Hoppock Law Firm, LLC
10985 Cody Street Suite 130
Overland Park, KS 66210

By: s/ *Matthew L. Hoppock*
Matthew L. Hoppock – Kan. #23854